[Cite as *State v. Burrell*, 2011-Ohio-5655.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96123**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RONALD BURRELL

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537996

**BEFORE:** Sweeney, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** November 3, 2011

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr., Esq.
75 Public Square, Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Katherine Mullin, Esq.
      Maxwell M. Martin, Esq.
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant Ronald Burrell ("defendant") appeals his conviction for theft as well as the trial court's order of restitution and imposition of fines and court costs. For the reasons that follow, we affirm in part and reverse and remand in part.

{¶ 2} Although defendant was charged with a four count indictment, he was only convicted and sentenced for one count of theft pursuant to R.C. 2913.02(A)(3), a felony of the fifth degree. The court imposed a six month jail term, imposed a $2,000.00 fine, court costs, and ordered him to pay restitution to Anna Woods in the amount of $1,130.00.

{¶ 3} According to the record, on November 4, 2009, defendant entered into a residential lease agreement[1] with Coretta Johnson, Square Harris, and Dominique Johnson

---

[1] The testimony from the record indicates that the terms were altered.

(the "tenants") concerning the property located at 1414 E. 221st Street in Euclid, Ohio (the "property").

{¶ 4} It is undisputed that defendant never owned the property.

{¶ 5} Anna Woods testified that she has owned the property since 1992. After receiving foreclosure notices, Ms. Woods moved out of the property sometime in 2006. Ms. Woods further testified that she filed bankruptcy on two different occasions in an effort to keep her house.[2] Ms. Woods said she thought she was losing the property to foreclosure and she did nothing with the property for a period of time. Upon discovering that there was someone occupying the property, Ms. Woods contacted her attorney and was advised that she still owned it and that there was a warrant out for her arrest for failing to register it as a rental property. Ms. Woods insisted that she never rented the property to anyone and never gave anyone else permission to do so. She had never met defendant and could not identify him from a photo lineup.

{¶ 6} An inspector from Euclid had cited the property for code violations and discovered that the tenants had entered a lease agreement with defendant. The inspector

---

Coretta said Dominique altered the terms of the lease with the intention of facilitating her efforts to qualify for subsidized housing but ultimately Dominique never presented the altered lease to anyone.

[2]Ms. Woods said the first bankruptcy did not include the property but the second bankruptcy did. Ms. Woods gave conflicting testimony as to the date on which her second bankruptcy was filed. In any event, she testified that at the time of the trial the bankruptcy was resolved and she was the owner of the property. There was no other evidence or documentation produced concerning the alleged bankruptcy filings or their effect on the ownership interest in the property except for Ms. Woods's testimony.

notified the assistant law director, who discovered from county records that Ms. Woods was still listed as the owner of the property. The assistant law director eventually met with Ms. Woods and was told that she had not rented out the property; nor had she given anyone else permission to rent it. The assistant law director then contacted defendant who claimed he had a management agreement with Ms. Woods that authorized him to enter the rental agreement with the tenants. However, when defendant met with the assistant law director, he admitted he did not have the agreement and felt he could do whatever he pleased with the property since it was the subject of a foreclosure action. He then proceeded to complete an Application for Certificate of Rental Occupancy and paid the associated fee. Defendant signed the application alleging to be the legal agent of Anna Woods.

{¶ 7}   Defendant later met with Detective Roose and claimed he had Ms. Woods's verbal permission to rent the property. He told Det. Roose that he asked Ms. Woods if he could have the property and she allegedly said yes. Although defendant said he could identify Ms. Woods, he could not identify her when presented with a photo array that contained her picture.

{¶ 8}   Coretta Jackson said she was required to pay $600.00 a month pursuant to her lease agreement with defendant. She recalled making at least two payments to defendant by way of money orders and cash. Det. Roose testified that defendant acknowledged receiving $1,130.00 in rental payments from the tenants; none of which was given to Ms. Woods.

{¶ 9} At sentencing, defendant stated that he undertook to repair and rent the property because it was negatively effecting the value of his home that was next door to it. Defendant believed the property was abandoned. He, however, acknowledged that he should not have put the tenants in the property. The trial court did not find defendant's explanation to be credible. After confirming that defendant had retained his counsel, the court imposed a fine of $2,000.00 and court costs and defendant did not object. Defendant further confirmed on the record that he was not indigent.

{¶ 10} The trial court's journal entry contained an order of restitution of $1,130.00 that is not contained in the sentencing transcript. This appeal followed.

{¶ 11} "I. Defendant was denied due process of law when the court overruled the motion for judgment of acquittal as to theft by deception involving Anna Woods and/or Washington Mutual."

{¶ 12} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 13} R.C. 2913.02(A)(3) provides:

**{¶ 14}** "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

**{¶ 15}** "* * *

**{¶ 16}** "(3) By deception.

**{¶ 17}** "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

**{¶ 18}** First, defendant asserts that the state failed to produce sufficient evidence that he committed theft by deception because he did not know Ms. Woods and therefore could not have possibly deprived her of her property by deception. Defendant's belief that a conviction under this statute requires him to affirmatively deceive the property owner in order to accomplish the theft is mistaken. The theft need only be facilitated by deception of "another." In this case, defendant derived personal gain by renting Ms. Woods's house to third parties without her permission. Coretta Johnson testified that defendant led her to believe he owned the property and had the authority to rent it. The assistant law director also testified that defendant told her he had authority from Ms. Woods to rent the property. By renting the property to the tenants without Ms. Woods's permission and by holding

himself out as Ms. Woods's legal agent, defendant exerted control over the property and deprived Ms. Woods of her ability to use or enjoy the property for her own purposes. In fact, Ms. Woods testified that even at the time of trial she was waiting for the tenants to find a new residence so she could move back into the property herself.

{¶ 19} Defendant further asserts that the theft claim should have failed because he maintains Ms. Woods had no interest in the property due to her alleged bankruptcy filings.

{¶ 20} No evidence besides Ms. Woods's own testimony was provided from which the terms of the bankruptcy could be ascertained; and her testimony on this point was vague and conflicting at times. In any event, Ms. Woods testified that she owned the property and although she at times believed she was going to lose it or had abandoned it in fear of foreclosure, she later discovered that she still owned it. She testified that the bankruptcy was over and she still owned the property. Additionally, the assistant law director testified that the county records reflected Ms. Woods as the owner of the property.

{¶ 21} Although defendant suggests that the trial court erred by failing to take judicial notice that bankruptcy under 11 U.S.C. 541(A) caused her property interest to become the property of the bankruptcy estate, the court had no documentation before it that would confirm the nature or type of bankruptcy that had allegedly been filed by Ms. Woods. Further, this court has noted that "'[i]t is * * * the defendant's relationship to the property which is controlling. The important question is not whether the person from whom the property is stolen was the actual owner, but rather whether the defendant had any lawful right to possession.' * * * The gist of the theft offense is the wrongful taking by

the defendant, not the particular ownership of the property." *State v. Jones*, Cuyahoga App. No. 92921, 2010-Ohio-902, quoting, *State v. Rhodes* (1982), 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (other citations omitted).

{¶ 22} There was sufficient evidence from which a rational trier of fact could conclude that defendant committed the theft offense as charged.

{¶ 23} The first assignment of error is overruled.

{¶ 24} "II.   Defendant was denied due process of law and the right to assistance of counsel when the court precluded argument concerning the effect of bankruptcy."

{¶ 25} "To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 26} Defendant bases his ineffective assistance of counsel claim on the fact that his attorney was not permitted to make closing arguments about the effect bankruptcy has on the debtor's ownership interest in real property.

{¶ 27} "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus. Further, "counsel in argument may persuade and advocate to the limit of his ability and enthusiasm so long as he does not misrepresent evidence or go beyond the limits of propriety set upon his arguments by the trial judge in his sound discretion." *Hall v. Burkert* (1962*),* 117 Ohio App. 527, 530-531, 193 N.E.2d 16.

{¶ 28} In the middle of trial the court advised defense counsel as follows: "if you are going to be arguing [the] bankruptcy trustee was the owner during closing argument in front of the jury, I would suspect then you will be introducing evidence during your case that that's true. I understand you arguing it for purposes of Rule 29, but I am cautioning you that that won't be accepted in closing argument unless you bring in the bankruptcy trustee or somebody else who's the owner other than Anna Woods, because there has been no showing."

{¶ 29} Despite this cautionary warning, defendant did not introduce any evidence besides Ms. Woods's own testimony about the effect that her bankruptcy filings had on her interest in the property. Ms. Woods testified that she owned the property despite her bankruptcy filings. It is axiomatic that closing arguments of counsel are not evidence. Because there was no evidence in the record to indicate that the bankruptcy trustee, rather than Ms. Woods, owned the property, the limitation on counsel's closing argument in this

regard could not have possibly affected the outcome of the trial on count 2, thereby negating the claim for ineffective assistance of counsel.

{¶ 30} The second assignment of error is overruled.

{¶ 31} "III: Defendant was denied due process of law when the court ordered restitution in its sentencing entry but not at its oral pronouncement."

{¶ 32} Defendant maintains that the journal entry that imposed an order of restitution was error because the same order was not made in open court. The state concedes this assignment of error pursuant to R.C. 2929.18(A)(1) which, among other things, provides: "If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court." This assignment of error is sustained to the extent that the state concedes that the trial court did not order that restitution be made to the victim in open court.[3] Accordingly, we are compelled to reverse the order of restitution and remand for the trial court to address the matter in open court as required by law.

{¶ 33} "IV: Defendant was denied due process of law when the court ordered restitution."

---

[3]We note that the trial court held further proceedings on June 27, 2011 pursuant to our remand order. That journal entry reflects that a court reporter was present at the hearing where the journal entry also reflects a restitution order, however, we do not have a transcript of that hearing.

{¶ 34} Defendant contends that restitution is inappropriate because Anna Woods has suffered no economic loss.

{¶ 35} "Economic loss" is defined by R.C. 2929.01(L) to mean "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense. 'Economic loss' does not include non-economic loss or any punitive or exemplary damages."

{¶ 36} The record establishes that defendant personally received $1,130.00 by renting Ms. Woods's property to the tenants and he did not give any of that money to Ms. Woods. Ms. Woods was not able to live in or rent her property during that time and, therefore, she suffered an economic loss to the extent that she did not receive the rental payments that were made for the use of her property. To provide otherwise would reward defendant for wrongfully exerting control over the property without Ms. Woods's permission or consent.

{¶ 37} The third assignment of error is overruled.

{¶ 38} "V: Defendant was denied due process of law when the court assessed restitution, fines and court costs without considering the statutory criteria."

{¶ 39} Defendant relies on *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, claiming the court's imposition of court costs, fines, and restitution was in error. We have already addressed the matter of restitution previously, which the state has

conceded was not addressed in open court. Unlike the issue of restitution, however, the trial court did advise defendant in open court that it was imposing court costs and a $2,000.00 fine. Accordingly, defendant's reliance on *Joseph* concerning those components of his sentence is misplaced.

{¶ 40} In *Joseph*, the court held that the trial court erred because it failed to mention the imposition of court costs in open court at the sentencing hearing. Accordingly, the court found it was error to impose them through the journal entry because Joseph had been deprived of his opportunity to move for waiver of the payment of court costs at the sentencing hearing. Id. at ¶22-23. Where, however, the court does advise the defendant in open court that it is ordering the payment of court costs, the defendant must make a motion at sentencing to waive them based on indigency and the court may (but is not required to) waive them. Otherwise, "'the issue is waived and costs are res judicata.'" Id. at ¶12, quoting, *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164 ¶23.

{¶ 41} At the sentencing hearing in this case, the court had the presentence investigation report and noted that defendant had provided information concerning his finances. Upon the court's inquiry, defendant acknowledged his ability to retain an attorney and that he would not be classified as indigent. Defendant made no objection to the fine that was imposed. Likewise, the trial court imposed court costs without any objection from defendant. Defendant did not request the trial court to waive the fine or costs claiming he was indigent. Rather, defendant indicated he was not indigent. Accordingly, this assignment of error is sustained in part and remanded with instructions

for the trial court to address the matter of restitution in open court and otherwise this assignment of error is overruled.

{¶ 42} Judgment affirmed in part, reversed in part solely as to the order of restitution and remanded for further proceedings.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, J., CONCUR